Billy Ray HARTLEY, Appellant,

v.

STATE of Alaska, Appellee.

No. 5737.

Court of Appeals of Alaska.

Oct. 29, 1982.

Christine Schleuss, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Billy Ray Hartley was convicted of first degree sexual assault, a class A felony, AS 11.41.410(a)(1), and burglary in the first degree, a class B felony, AS 11.46.-300(a)(1). As a second offender Hartley was sentenced to the four-year presumptive term for the burglary. The presumptive term for the sexual assault was ten years. Judge Carlson found an aggravating factor—that the victim was incapacitated, AS 12.55.155(c)(5)—upon which the state had not previously relied. He sentenced Hartley to fifteen years' imprisonment for the sexual assault, to be served concurrently with the sentence for the burglary. Hartley appeals his conviction and sentence. We will discuss his contentions that the court erred in refusing to instruct on certain lesser-included offenses, in finding an aggravating factor which had not been relied upon by the state, and in not giving Hartley advance notice and an opportunity to be heard.[1]

At 6:00 a.m. on March 26, 1980, Billy Ray Hartley went uninvited to the home of A.T. While Hartley may have met A.T. through a mutual friend in the summer of 1979, and was aware that she lived alone, he and A.T. were not personally acquainted and had never had a sexual relationship.

The following description of what occurred thereafter is taken verbatim from Hartley's brief, except that we substitute A.T.'s initials for her name and omit citations to the record:

Sometime around 6:00 A.M., Hartley left for the home of Ms. A.T. When Hartley reached T.'s house, he donned a ski mask and entered the house through the unlocked front door. T. was asleep when Hartley entered and he vacillated about whether to remain in the house or leave. He then stood and watched T. for several minutes. While he was standing there, T. stirred and awoke. Hartley threw a robe hanging nearby over her head to obscure her vision. As T. began to scream, Hartley put his hand over her mouth to quiet her, told her to be quiet, and reassured

---

1. We dispose of Hartley's other claimed errors as follows:

Hartley conceded that he wore a ski mask when he confronted A.T., the victim. Hartley argues that the trial court erred in requiring him to wear the ski mask in the presence of the jury and in asking him two questions:

Q: Mr. Hartley, did you have an erection when [A.T.] was performing fellatio on you?
A: Yes I did.
Q: Did you have an emission?
A: Yes, I did.

Hartley argues that wearing the face mask and answering the questions was demeaning, irrelevant and prejudicial. We disagree. Requiring Hartley to show the jury how he appeared in a ski mask was highly relevant to show how he appeared to A.T. at the time of the incident. It could aid the jury in resolving the conflict between Hartley's testimony that A.T. consented freely and voluntarily to perform fellatio and A.T.'s testimony that she submitted out of fear. Even if Hartley's claim of consent is felt to be incredible, the state still has the right to offer evidence to contradict it.

Judge Carlson's two questions were relevant on the question of lesser-included offenses, an issue discussed *infra*. The probative value of the face mask and Hartley's answers to the questions outweighed any prejudice. Alaska R.Evid. 403.

Finally, we are satisfied that Judge Carlson remained within the boundaries set by Alaska R.Evid. 614(b) when he questioned Hartley. Specifically, we find that the judge did not communicate a bias against Hartley to the jury or suggest in any manner that he did not believe Hartley.

her that he was not going to hurt her. At no time did Hartley use or display a weapon or in any way injure or attempt to injure T.

After T. calmed down, she asked Hartley what he wanted, and he responded that he wanted to have sexual intercourse with her. T. explained that vaginal intercourse was impossible because of a pelvic inflammatory disorder. She explained further that intercourse in her present condition would lead to serious injury and hospitalization. Hartley accepted T.'s word and, rather than injure her, requested that she perform an act of fellatio. Hartley and T. then spoke together for several minutes. They exchanged names and T. attempted to convince Hartley that he was doing the wrong thing. Hartley took her attempts to dissuade by such statements as "perhaps you can come back some other time" as encouragement, and again directed T. to perform fellatio. T. complied and Hartley, after informing her that he wanted her to enjoy it too, attempted briefly to perform cunnilingus on T. After completion of the act, Hartley got up from the bed, put a pillow and a mattress cover over T.'s face, in addition to the robe, and left. T. waited until he had gone, then telephoned a friend who suggested that she call the police, which she did.

A.T. testified that Hartley told her that he would not hurt her "if [she] did what he said." She stated that he fondled her vagina while attempting to perform cunnilingus. She vehemently denied that she had consented to perform fellatio and stated that she assented because she thought that if she did not, he would kill her.

## LESSER–INCLUDED OFFENSES

Hartley argues that he was entitled to instructions on simple assault, attempted sexual assault in the first degree, and sexual assault in the second degree. He relies on Alaska Rule of Criminal Procedure 31(c). He concedes that his theory of defense was consent and that consent is a defense to each of the lesser-included offenses he raises. Also, he concedes that his testimony was consistent with that of A.T. in establishing "sexual penetration," the definition of which includes "fellatio." AS 11.81.-900(b)(52). Sexual penetration distinguishes the crime for which Hartley was convicted from the other offenses upon which he wished the court to instruct the jury. Nevertheless, he argues that the jury could have found that he assaulted A.T., subjected her to sexual contact, and in fact intended to force her to have vaginal intercourse, but after committing these crimes changed his mind, desisted from further violence, won A.T.'s confidence and forgiveness and thereafter persuaded her to freely and voluntarily perform fellatio upon him. Thus, he argues her consent would preclude prosecution for forced fellatio but would not excuse the prior assaults. Hartley relies upon *People v. Hager,* 72 Mich.App. 664, 250 N.W.2d 754 (1976).

The state counters that the facts hypothesized by Hartley amount to separate offenses rather than a greater and a lesser-included offense, since under Hartley's theory the assaultive conduct came to an end and A.T.'s fear was dissipated before she assented to fellatio. If A.T.'s assent was influenced by the prior assaults or fear of their repetition, it was not consent. *See* AS 11.41.470(3)(A). We agree with the state and hold that the court is not obligated to instruct on offenses which might have been charged but were not charged unless they are true lesser-included offenses. A true lesser-included offense requires some evidence which would support a jury finding that the state did not prove one or more elements of a greater offense, thereby permitting the jury to find the lesser offense. Here the undisputed evidence including Hartley's testimony established sexual penetration. There was therefore no duty to instruct on attempted sexual penetration or forcible sexual contact.

This decision is not inconsistent with the supreme court's decision in *Tuckfield v. State,* 621 P.2d 1350 (Alaska 1981). In *Tuckfield,* the court held that a defendant

could not be convicted of both assault with intent to commit rape and rape where in a continuous course of conduct he threw his victim to the floor, banged her head on the floor when she screamed for help, and raped her. 621 P.2d at 1353. *Accord Too-kak v. State,* 648 P.2d 1018 (Alaska App. 1982).

Hartley raises one additional relevant argument.[2] Although conceding that the evidence of sexual penetration was undisputed, he argues that an American jury has the right to arbitrarily disregard evidence, evaluate the case in light of its collective view of propriety, and reach a fair verdict. Consequently, he concludes, he was entitled to lesser-included offense instructions on the assumption that the jury could arbitrarily elect to disregard the evidence of sexual penetration. Hartley relies on a series of Michigan decisions, such as *People v. Chamblis,* 395 Mich. 408, 236 N.W.2d 473, 478–83 (1975), and Comment, *Jury Instructions on Lesser Included Offenses,* 57 Nw.U.L.Rev. 62, 67 (1962). Hartley's argument is a variation on the doctrine of jury nullification. *See* Scheflin, *Jury Nullification: The Right to Say No,* 45 S.Cal.L.Rev. 168 (1972); Note, *Toward Principles of Jury Equity,* 83 Yale L.J. 1023 (1974). We reject this argument and the doctrine of nullification. The jury has a duty, albeit unenforceable, to decide a criminal case on the law and the evidence. A defendant's right to a jury trial is not infringed by the trial court's refusal to instruct on lesser-included offenses or affirmative defenses without support in the evidence. Such a refusal does not amount to a directed verdict against the accused in a criminal case. *Sparf v. United States,* 156 U.S. 51, 105–07, 15 S.Ct. 273, 294–95, 39 L.Ed. 343, 362–63 (1895). *Cf. Horning v. District of Columbia,* 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185 (1920) (peremptory instruc-

tion does not constitute a directed verdict against the accused). The Alaska Supreme Court has consistently held that a lesser-included offense instruction must be based on a reasonable interpretation of the facts in the record. *Loesche v. State,* 620 P.2d 646, 652 (Alaska 1980); *Valentine v. State,* 617 P.2d 751, 752 (Alaska 1980); *Christie v. State,* 580 P.2d 310, 320 (Alaska 1978); *Hawthorne v. State,* 501 P.2d 155, 157 (Alaska 1972). In *Christie* the supreme court specifically held, "We do not believe that juries should reach verdicts by compromise, and we will not give our approval to such procedures." 580 P.2d at 320 n. 38. Therefore, the trial court did not err in denying the lesser-included offense instructions requested by Hartley.

## THE SENTENCE

Judge Carlson presided over the jury trial and imposed sentence. Hartley gave notice of three mitigating factors in conformity with AS 12.55.155(f). The state disputed these factors but did not argue that any aggravating factors were present. On a number of occasions, the state indicated its satisfaction with the ten-year presumptive sentence for a first degree sexual assault applicable to second felony offender Hartley. Nevertheless, Judge Carlson found an aggravating factor which he mentioned to the parties for the first time in the context of his closing sentencing remarks. He then sentenced Hartley to fifteen years for first degree sexual assault.

A person previously convicted of a felony who is convicted of a second class A, B, or C felony must receive the presumptive sentence unless the court finds aggravating or mitigating factors by clear and convincing evidence after both parties are given notice and an opportunity to be heard. AS 12.55.125; AS 12.55.155. The state confesses error, conceding that Hartley was enti-

---

2. Hartley might also be arguing that his undeniable battery of A.T. might have angered the jury so that they would hesitate to let him go free even if they had a reasonable doubt that A.T. consented to fellatio. Hartley seems to be saying the jury should have been permitted to express their disapproval of his conduct by convicting him of assault, without having to find him guilty of the greater offense. We reject this argument. If the jury had reasonable doubt regarding A.T.'s consent, the instructions required that they acquit Hartley. We expect juries to follow the instructions.

tled to notice and an opportunity to be heard. AS 12.55.155(f). The parties may rely upon evidence introduced during trial to sustain their respective burdens of proving aggravating and mitigating factors. *See Wolf v. State,* 647 P.2d 609 (Alaska App.1982). However, they are entitled to notice in advance of the sentencing hearing regarding the aggravating and mitigating factors in question. This enables them to conduct orderly preparation, and gives them an opportunity to rebut trial evidence at the sentencing hearing. *See Wolf,* 647 P.2d at 611. We therefore accept the state's concession of error and remand for resentencing. *Marks v. State,* 496 P.2d 66 (Alaska 1972).

In addition, Hartley argues that the trial court may not *sua sponte* consider aggravating factors not previously argued by the state even if adequate notice is given. Hartley relies on cases interpreting habitual criminal statutes which hold that it is discretionary with the prosecution to determine whether to prosecute a defendant as a first or second offender. *See, e.g., Brandon v. United States,* 239 A.2d 159 (D.C.App. 1968). Hartley maintains that this power to determine whether to proceed against someone as a habitual offender extends to deciding whether aggravating factors should be alleged in enhancement of sentencing, and is akin, in Hartley's estimation, to the prosecution's common-law *nolle prosequi* power. *See State v. Carlson,* 555 P.2d 269 (Alaska 1976); *Public Defender Agency v. Superior Court,* 534 P.2d 947 (Alaska 1975).

■ We disagree. The state has discretion whether or not to institute a prosecution. Once it has obtained a conviction, however, the legislature has established specific guidelines governing sentencing. These guidelines are particularly important in determining presumptive sentences for those previously convicted of felonies. The decision to circumscribe sentencing discretion was in large part based upon a legislative belief that greater uniformity in sentencing should be sought and unjustified disparity eliminated. AS 12.55.005.

■ To allow the parties to ignore past convictions or aggravating and mitigating factors suggested by the evidence at trial or disclosed in a presentence report prepared by a probation officer would be to encourage unjustified disparity in sentencing. We therefore hold that the state has no discretion to suppress evidence of past convictions or aggravating or mitigating factors. We are not faced with a prisoner's detrimental reliance on a plea or sentence bargain. No such bargain has been alleged. In fact, the attorney general has announced a policy precluding district attorneys from entering into plea and sentence bargains. *See State v. Buckalew,* 561 P.2d 289, 290–91 (Alaska 1977). Therefore, Hartley's reliance on *State v. Murphy,* 113 Ariz. 416, 555 P.2d 1110 (1976), is misplaced.

■ We therefore conclude that the trial court has the power *sua sponte* to alert the parties to possible aggravating and mitigating factors present in the record so long as the parties are given an opportunity to marshall the relevant evidence, pro and con, and make their arguments accordingly. *State v. Marquez,* 127 Ariz. 3, 617 P.2d 787 (Ct.App.1980).

We do not believe that this power permitting the trial court to question the parties about the legal effect of evidence in the record turns the judge into a prosecutor in violation of the separation of powers. *Cf. In re Hanson,* 532 P.2d 303, 306 (Alaska 1975) (the combination of investigative and judicial functions in a single agency does not necessarily violate due process). The trial court must always be sensitive to the appearance of justice and the necessity of appearing impartial. But neither justice nor impartiality suffer when a trial judge ensures that the sentence imposed properly reconciles the legislative intent of the presumptive sentencing statutes with the facts of a given case.

The judgment of conviction is AFFIRMED. The sentence is VACATED and this case is REMANDED to the superior court for resentencing.