NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| NICK A. FRANKSON, | Court of Appeals No. A-13690 |
| Petitioner, | Trial Court Nos. 2KB-18-00529 CR, |
| | 2KB-19-00373 CR, & 2KB-19-00374 CR |
| v. | |
| | O P I N I O N |
| STATE OF ALASKA, | |
| Respondent. | No. 2732 — September 16, 2022 |

Petition for Review from the Superior Court, Second Judicial District, Kotzebue, Paul A. Roetman, Judge.

Appearances: Renee McFarland (petition), and Claire F. DeWitte, (briefing and argument), Assistant Public Defenders, and Samantha Cherot, Public Defender, Anchorage, for the Petitioner. Hazel C. Blum, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Respondent.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge ALLARD.

In this petition for review, we are asked to decide whether a trial court may *sua sponte* consider non-*Blakely* aggravating factors when evaluating whether to accept

or reject a sentencing agreement under Alaska Criminal Rule 11.[1] (A non-*Blakely* aggravating factor is a statutory aggravating factor based on a defendant's prior convictions that can be found by a judge and does not require a jury finding beyond a reasonable doubt.[2])

For the reasons explained in this opinion, we conclude that, just as a trial court has the authority to consider a mitigating factor when evaluating whether to reject a sentencing agreement as too severe, a trial court has the authority to consider a non-*Blakely* aggravating factor when evaluating whether to reject a sentencing agreement as too lenient.[3]

We further conclude that, while the decision of whether to accept or reject a sentencing agreement rests in the sound discretion of the trial court after consideration of the *Chaney* criteria,[4] there are additional factors that a trial court should consider if they are brought to the court's attention. These factors include, but are not limited to: (1) evidentiary and witness issues; (2) the victim's wishes; (3) resource limitations; and (4) relevant circumstances beyond the parties' control (such as the COVID-19 pandemic).

Lastly, we hold that when a trial court rejects a sentencing agreement as either too severe or too lenient, the court is required to follow the procedures outlined in Criminal Rule 11(e)(3) and to place its reasons for rejecting the sentencing agreement on the record for the benefit of the parties and any appellate review.

---

[1]   *See* Alaska R. Crim. P. 11(e)(1).

[2]   *See Blakely v. Washington*, 542 U.S. 296, 301-02 (2004).

[3]   *See* Alaska R. Crim. P. 11(e)(3) (describing the procedures for when a trial court rejects a sentencing agreement as too severe or too lenient).

[4]   AS 12.55.005; *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

*Background facts*

In July 2018, Officers Gary Moore and Aaron Grimes were dispatched to a residence in Point Hope after receiving a report that Nick A. Frankson was intoxicated and may have discharged a firearm. When the officers arrived on the scene, they observed Frankson holding a rifle inside the residence with the door open. The officers drew their guns as Frankson raised the rifle towards Officer Moore. Officer Moore fired one round at Frankson, who closed the door. A few minutes later, Frankson left the residence and fled on foot. Officer Grimes followed Frankson until he surrendered.

Once in the patrol car, Frankson began kicking the car door. Officer Grimes opened the doors to prevent damage, and Frankson kicked at Officer Grimes's face. A breath test revealed that Frankson had a blood alcohol content of 0.133 percent.

The officers later observed "two spent .223 shell casings near the front door" of the residence and received a report from a neighbor of shots being fired in the area prior to the officers' arrival. The affidavit accompanying the complaint stated that "due to the layout of the neighborhood there is no position in which a gun could be fired without being in the direction of a building or dwelling."

Frankson was ultimately indicted on one count of second-degree misconduct involving weapons (knowingly discharging a firearm at or in the direction of a dwelling)[5] and two counts of third-degree assault (recklessly placing another person in fear of imminent serious physical injury by means of a dangerous instrument).[6]

The parties then entered into a plea agreement in which Frankson agreed to plead guilty to one count of third-degree assault in exchange for dismissal of the other counts. As part of the plea agreement, Frankson agreed to stipulate to three aggravating

---

[5] AS 11.61.195(a)(3)(B).

[6] AS 11.41.220(a)(1)(A).

factors — AS 12.55.155(c)(8) ("defendant's prior criminal history includes conduct involving . . . repeated instances of assaultive behavior"); AS 12.55.155(c)(13) ("defendant knowingly directed the conduct constituting the offense at . . . [a] law enforcement officer"); and AS 12.55.155(c)(19) ("defendant's prior criminal history includes an adjudication as a delinquent for conduct that would have been a felony if committed by an adult").

Although Frankson had an extensive prior history of misdemeanor assaults, Frankson qualified as a first felony offender and faced a presumptive sentence of 0 to 2 years if no aggravating factors applied.[7] However, with the aggravators, Frankson could be sentenced up to a maximum of 5 years. The parties agreed upon a sentence of 5 years with 4 years suspended (1 year to serve) as part of their plea agreement.

In April 2019, the superior court accepted Frankson's plea of guilty and ordered a presentence report, deferring the question of whether it accepted the parties' sentence agreement until sentencing.[8]

Prior to sentencing, while on bail release, Frankson was arrested for allegedly making homebrew, punching his nephew and another man, and threatening the two men with a whaling tool. Frankson was charged with five felonies and five misdemeanors: one count of trafficking in liquor without a license or permit in a local

---

[7]    See AS 12.55.125(e)(1). The record shows that Frankson was convicted of a felony offense in 2006, but the parties agreed that this conviction was outside the statutory look-back period for prior felonies and therefore did not serve to increase the presumptive sentencing range. See AS 12.55.145 (defining when prior felony convictions can be considered).

[8]    See Alaska R. Crim. P. 11(e)(1) ("If the parties reach a sentencing agreement, the court shall require disclosure of the agreement in open court at the time the plea is offered. Once the agreement has been disclosed, the court may accept or reject the agreement, or may defer that decision until receipt of a presentence report. If the court accepts the agreement, the court may impose sentence without a presentence investigation.").

option area,[9] four counts of third-degree assault,[10] two counts of fourth-degree assault,[11] and three counts of violating his conditions of release.[12]

Frankson was separately charged in a third case with violating conditions of release for contacting one of the witnesses from the original weapons misconduct case.[13]

The parties subsequently changed their plea agreement to resolve all three cases through a global plea agreement. Under the new agreement, Frankson's guilty plea to the third-degree assault charge in the first case would remain, and he would serve 600 days of imprisonment for that conviction. With regard to the second case, Frankson agreed to plead guilty to one count of fourth-degree assault and to serve 120 days of imprisonment consecutive to the term of imprisonment on the third-degree assault conviction, for a total composite sentence of 720 days. In exchange, the State agreed to dismiss the remaining counts from the second case and to dismiss the third case in its entirety.

In January 2020, the superior court accepted Frankson's guilty pleas and set the matter for a sentencing hearing. The court held the sentencing hearing in March 2020. At the hearing, Officer Moore objected to the plea agreement as too lenient, asserting that Frankson was dangerous. The probation officer who authored the presentence report also objected to the plea agreement as too lenient.

---

[9] AS 04.11.010(a).

[10] AS 11.41.220(a)(1)(A), (a)(5).

[11] AS 11.41.230(a)(1).

[12] AS 11.56.757(a).

[13] *Id.*

Frankson and the State defended the plea agreement, explaining that all three cases had serious evidentiary issues. The parties also indicated that the grand jury indictment in the original weapons misconduct case had been difficult to obtain.

The court questioned the parties as to whether the global plea agreement included the stipulated aggravating factors that had been part of the original agreement. Frankson asserted that it did not; the State asserted that it did. The court continued the sentencing hearing to allow the parties to submit briefing.

The State then filed a notice that it was withdrawing its offer on the ground that there had been no meeting of the minds regarding whether the aggravating factors applied. Frankson moved to enforce the plea agreement. The superior court granted Frankson's motion to enforce the plea agreement, finding that the original stipulation to the aggravating factors was not part of the new global plea agreement. However, the superior court also ruled that it had the authority to *sua sponte* consider any non-*Blakely* aggravators established by the record in evaluating whether to accept or reject the sentencing agreement.

At the continued sentencing hearing, Frankson argued that the superior court had no authority to consider any non-*Blakely* aggravators and that the sentencing agreement should therefore be evaluated based on the assumption that the maximum sentence Frankson could receive on the third-degree assault charge was 2 years. The State disagreed. The State pointed out that there was a non-*Blakely* aggravator that could be found based on Frankson's prior misdemeanor assault convictions — AS 12.55.155(c)(8) ("defendant's prior criminal history includes conduct involving . . . repeated instances of assaultive behavior"). And the State argued that the court should therefore evaluate the sentencing agreement based on the 5-year maximum that could theoretically be imposed given the existence of this aggravator.

The superior court agreed with the State. The court further reasoned that, having found the non-*Blakely* aggravator based on Frankson's prior convictions, it could also consider the *Blakely* aggravator under AS 12.55.155(c)(13) — "defendant knowingly directed the conduct constituting the offense at . . . [a] law enforcement officer." The court then announced that it was rejecting the sentencing agreement as too lenient in light of these aggravating factors.

Frankson petitioned this Court for interlocutory review, arguing that it was error for the superior court to consider a non-*Blakely* aggravator when evaluating the reasonableness of the sentencing agreement given that there was no agreement between the parties regarding that aggravator.

We granted the petition and ordered briefing on two questions: (1) whether a sentencing court may *sua sponte* consider non-*Blakely* aggravating factors when evaluating a sentencing agreement under Alaska Criminal Rule 11; and (2) whether a sentencing court should apply the "clearly mistaken" standard used to review a sentence on appeal when deciding whether to accept or reject a sentencing agreement.

*Background information on Alaska's presumptive sentencing scheme*

In order to address the legal questions raised by this case, we must first provide some background information about Alaska's presumptive sentencing scheme and the effect that the United States Supreme Court's 2004 case *Blakely v. Washington* had on that scheme.[14]

In 1978, the Alaska legislature enacted a presumptive sentencing scheme for most felony convictions, with the intended purpose of "eliminating disparity in the sentencing of similarly situated offenders and making criminal sentencing a predictable,

---

[14] *Blakely v. Washington*, 542 U.S. 296 (2004).

internally consistent process."[15] Under this "relatively inflexible" scheme, a defendant's presumptive felony sentence was determined by (1) the level of the defendant's offense and (2) the defendant's prior felony convictions.[16] Certain felony offenses, such as murder and kidnapping, were placed outside the presumptive sentencing scheme and designated as "unclassified" felonies.[17] The remainder of the felony offenses were divided into three classes (A, B, and C) — with class A felonies being the most serious.[18] Defendants were also classified based on their criminal history, with first felony offenders having no prior felony convictions, second felony offenders having one prior felony conviction, and third felony offenders having two or more prior felony convictions.[19] Thus, under the scheme, a defendant convicted of a class A felony would face a higher presumptive sentence than a defendant convicted of a class B or class C felony. Likewise, a defendant with prior felony convictions would face a higher

---

[15] *Juneby v. State*, 641 P.2d 823, 829-30 (Alaska App. 1982), *modified on other grounds,* 665 P.2d 30 (Alaska App. 1983); *see* SLA 1978, ch. 166, § 12; AS 12.55.005. Prior to 1978, the Alaska legislature commissioned a number of studies on sentencing patterns in Alaska. These studies revealed disparities in sentencing based on race and the identity of the judge. *See, e.g.*, Beverly Cutler, *Sentencing in Alaska: A Description of the Process and Summary of Statistical Data for 1973*, at 176 (1975) (concluding that "disparities of such great proportion as noted [in this study], especially among racial groups, suggests strongly an anomalous influence in the sentencing process that warrants careful follow-up investigation"); Alaska Judicial Council, *Alaska Felony Sentencing Patterns: A Multivariate Statistical Analysis (1974-1976)*, at iii-iv (1977) (finding that the strictness or leniency of the individual sentencing judge was an important determinant of the length of a sentence).

[16] *Juneby*, 641 P.2d at 830-33.

[17] SLA 1978, ch. 166, §§ 3, 10, 12.

[18] SLA 1978, ch. 166, § 10.

[19] SLA 1978, ch. 166, § 12; *see* AS 12.55.125.

presumptive sentence than a defendant convicted of the same offense who did not have any prior felony convictions.

As originally enacted, Alaska's presumptive sentencing scheme used presumptive terms — *i.e.*, a set term of imprisonment for each defendant based on the level of offense and the defendant's prior felony convictions.[20] For the most part, the presumptive terms were "intended as appropriate for imposition in most cases, without significant upward or downward adjustment."[21] But the legislature also created statutory factors in aggravation and mitigation that gave the sentencing court the authority to impose additional active or suspended time over the presumptive term or to impose a sentence below the presumptive term, as appropriate.[22] These statutory aggravating and

---

[20]  SLA 1978, ch. 166, § 12.  In fact, the 1978 law only created "presumptive terms" for second and third felony offenders, as courts retained broader discretion for sentencing first felony offenders (except for some serious offenses or when the offender used a firearm or caused serious physical injury).  *Id.*; *see Juneby*, 641 P.2d at 830-31.  However, this distinction is not significant for our purposes and has since been eradicated by later legislation.  *See, e.g.*, AS 12.55.125(c)(1).

[21]  *Juneby*, 641 P.2d at 833.

[22]  SLA 1978, ch. 166, § 12; *see* AS 12.55.155 (factors in aggravation and mitigation); *Juneby*, 641 P.2d at 831 (noting that AS 12.55.155 "allows a sentencing judge to adjust a presumptive term upward or downward based on a finding of aggravating or mitigating factors").  The legislature also authorized sentencing courts, in extraordinary cases, to refer a presumptive sentencing case to a three-judge sentencing panel based on a non-statutory mitigating or aggravating factor or manifest injustice.  SLA 1978, ch. 166, § 12; *see* AS 12.55.165 (defining extraordinary circumstances); AS 12.55.175 (providing procedures for three-judge sentencing panel); *Dancer v. State*, 715 P.2d 1174, 1177 (Alaska App. 1986) (explaining that the legislature intended AS 12.55.165 to establish two separate bases for referral of a case to a three-judge sentencing panel).

mitigating factors had to be proved by clear and convincing evidence and found by the judge.[23]

Trial courts were nevertheless cautioned to take a "measured and restrained approach" in adjusting sentences to accommodate aggravating and mitigating factors so as to ensure that the overall goal of eliminating disparity and achieving some measure of uniformity was maintained.[24]

Alaska Criminal Rule 32.1 governs the procedures for litigating a statutory aggravator or mitigator to the trial court.[25] As a general matter, the State is required to give notice prior to the sentencing hearing of any aggravators it intends to argue at sentencing.[26] The defendant likewise must give notice of any proposed mitigators prior to the sentencing hearing.[27] The rule requires the court to then give the parties the opportunity to present evidence and arguments regarding the proposed aggravators or

---

[23]   SLA 1978, ch. 166, § 12 (creating AS 12.55.155(f)).

[24]   *Juneby*, 641 P.2d at 833 ("Unless the provisions of AS 12.55.155 are adhered to strictly, and unless a measured and restrained approach is taken in the adjustment of presumptive sentences for both aggravating and mitigating factors, then the prospect of attaining the statutory goal of uniform treatment for similarly situated offenders would quickly be eroded, the potential for irrational disparity in sentencing would threaten to become reality, and the revised code's carefully fashioned system of escalating penalties for repeat offenders would be rendered utterly ineffective.").

[25]   *See also* AS 12.55.155(f) (setting forth procedures for both *Blakely* and non-*Blakely* aggravators).

[26]   *See* Alaska R. Crim. P. 32.1(c) (requiring notice seven days after receipt of the presentence report or at least thirty days prior to sentencing if no report is ordered). *But see* AS 12.55.155(f)(1) (stating that written notice of non-*Blakely* aggravators must be filed "not later than 10 days before the date set for imposition of sentence"); AS 12.55.155(f)(2) (setting pretrial or pre-guilty plea notice requirements for *Blakely* aggravators).

[27]   Alaska R. Crim. P. 32.1(d) (requiring defendant to give notice of proposed mitigating factors within seven days after the State's notice of aggravating factors).

mitigators.[28]  Notably, the rule grants trial courts the discretion not to enter any findings on a disputed aggravator or mitigator if the court "affirmatively determines that resolution of a disputed factor . . . is immaterial to the imposition of a just sentence."[29]

In a 1982 case, *Hartley v. State*, this Court addressed the question of whether a trial court could *sua sponte* find a statutory aggravating factor that had not been raised or argued by the State.[30]  *Hartley* involved a defendant who was convicted, following a jury trial, of first-degree sexual assault and burglary.[31]  Hartley proposed three mitigating factors which were rejected by the trial court.  The State opposed the mitigating factors but did not file notice of any aggravating factors.  At sentencing, the prosecutor indicated that the State would be satisfied with the presumptive term.  The trial court nevertheless *sua sponte* found an aggravating factor and sentenced Hartley to a sentence above the presumptive term.[32]

Hartley appealed, arguing that the trial court had no authority to find a statutory aggravating factor that the State had not raised or argued.  According to Hartley, an aggravating factor was akin to a criminal charge, and therefore only the State had the power to decide whether an aggravating factor should apply to a given case.[33]

This Court disagreed that statutory aggravating factors fell within the State's charging authority.  Instead, we held that statutory aggravating factors fell within

---

[28]  Alaska R. Crim. P. 32.1(f).

[29]  Alaska R. Crim. P. 32.1(f)(2).

[30]  *Hartley v. State*, 653 P.2d 1052, 1056 (Alaska App. 1982).

[31]  *Id.* at 1053.

[32]  *Id.* at 1055.

[33]  *Id.* at 1056.

the court's sentencing authority.[34] We noted that the Alaska legislature had enacted a presumptive sentencing scheme with the stated intention of increasing uniformity in sentencing and eliminating unjustified disparities.[35] And we reasoned that to allow the parties to ignore aggravating and mitigating factors suggested by the evidence at trial or disclosed in a presentence report would be contrary to that legislative intent. We therefore held that the trial court had the authority to *sua sponte* alert the parties to possible aggravating and mitigating factors present in the record as long as the parties were given an adequate opportunity to argue for or against those factors.[36] Because the parties had not been given an opportunity to respond to the trial court's *sua sponte* application of a statutory aggravating factor in Hartley's case, we remanded the case to the trial court to provide them with that opportunity.[37]

The *Hartley* rule that a trial court has the authority to *sua sponte* consider statutory aggravating and mitigating factors that were not raised by the parties remained good law in Alaska until 2004, when the United States Supreme Court decided *Blakely v. Washington*.[38] In *Blakely*, the Supreme Court held that the Sixth Amendment right to a jury trial prohibits judges from enhancing maximum sentences based on facts other than those facts decided by a jury beyond a reasonable doubt, conceded by the defendant, or based on the defendant's prior convictions.[39]

---

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Blakely v. Washington*, 542 U.S. 296 (2004).

[39] *Id.* at 301-04.

In response to *Blakely*, the 2005 Alaska legislature revised Alaska's presumptive sentencing laws in two substantive ways.[40] First, the legislature replaced the previous presumptive terms with presumptive ranges, with the former presumptive term serving as the low-end of the new range.[41] In doing so, the legislature made clear that its intent was to restore judicial sentencing discretion that had been "unduly constrain[ed]" by *Blakely*; it was "not . . . to bring about an overall increase in the amount of active imprisonment for felony sentences."[42]

Second, the legislature created two classes of aggravating factors: (1) aggravating factors that could be proved to a judge, sitting without a jury, by clear and convincing evidence,[43] and (2) aggravating factors that had to be proved to a jury beyond a reasonable doubt.[44] The first set of aggravating factors — those that can be proved to a judge and found by clear and convincing evidence — are those aggravators that are based on a defendant's prior convictions and are referred to as "non-*Blakely* aggravators" because they do not implicate the Sixth Amendment jury trial right recognized in *Blakely*.[45] The second set of aggravating factors — those that must be

---

[40] SLA 2005, ch. 2, § 1.

[41] SLA 2005, ch. 2, §§ 9-14.

[42] SLA 2005, ch. 2, § 1 ("Although the presumptive terms are being replaced by presumptive ranges, it is not the intent of this Act in doing so to bring about an overall increase in the amount of active imprisonment for felony sentences. Rather, this Act is intended to give judges the authority to impose an appropriate sentence, with an appropriate amount of probation supervision, by taking into account the consideration set out in AS 12.55.005 and 12.55.015.").

[43] SLA 2005, ch. 2, § 21; *see* AS 12.55.155(f)(1).

[44] SLA 2005, ch. 2, § 21; *see* AS 12.55.155(f)(2).

[45] *See* AS 12.55.155(f)(1); *Blakely v. Washington*, 542 U.S. 296, 301-02 (2004)

(continued...)

proved to a jury beyond a reasonable doubt — are referred to as "*Blakely* aggravators" because they do implicate a defendant's Sixth Amendment right to a jury trial.[46]

As this Court subsequently recognized in *Alexiadis v. State*, the distinction between *Blakely* and non-*Blakely* aggravators has significant repercussions for a trial court's sentencing authority.[47]

*Alexiadis* involved a trial court's rejection of a sentencing agreement in which the parties agreed that no aggravating factors would be argued.[48] The defendant in *Alexiadis* pleaded guilty, pursuant to a partial plea agreement, to a consolidated count of second-degree assault for injuring his infant son. As part of the partial plea agreement, the defendant agreed not to argue any mitigating factors or to seek referral to the three-judge sentencing panel. The State also agreed not to pursue any aggravating factors. Sentencing was otherwise left open to the court. Because the parties agreed that no aggravators would apply, the defendant faced a presumptive range of 1 to 3 years.[49]

The superior court rejected the parties' agreement as too lenient because it found that there were two *Blakely* aggravators — AS 12.55.155(c)(5) (particularly vulnerable victim) and AS 12.55.155(c)(18)(A) (offense committed against a member of the same social unit) — that clearly applied and would give the court the authority to sentence the defendant to more than 3 years to serve if they had been found. The

---

[45] (...continued)
(holding that trial courts can rely on prior convictions); *see also Apprendi v. New Jersey*, 530 U.S. 466, 488-90 (2000) (explaining that prior convictions have sufficient procedural safeguards because they had to be proved to a jury beyond a reasonable doubt).

[46] *See* AS 12.55.155(f)(2).

[47] *Alexiadis v. State*, 355 P.3d 570, 572-73 (Alaska App. 2015).

[48] *Id.* at 571.

[49] *Id.*

defendant filed a petition for review in this Court, challenging the rejection of their agreement and arguing that whether to pursue a *Blakely* aggravator was a charging decision entrusted to the sole discretion of the prosecuting authority.[50] The State agreed.

We reversed the superior court's decision.[51] In our decision, we noted the difference between a "sentencing agreement" — *i.e.*, an agreement that "limits the court's sentencing authority for a particular charge or set of charges" — and a "charge agreement" — *i.e.*, an agreement that "specifies the charges to which the defendant will plead guilty" often in exchange for the dismissal of other charges.[52] And we noted that Alaska Criminal Rule 11(e) only grants trial courts the authority to reject *sentencing* agreements; it does not grant trial courts any authority to reject charge agreements.[53]

We then reasoned that because prosecutors were now required to prove the underlying facts of a *Blakely* aggravator to a jury beyond a reasonable doubt, the

---

[50]  *Id.*

[51]  *Id.* at 573.

[52]  *Id.*

[53]  *Id.*; *see also* Alaska R. Crim. P. 11(e) (referring only to "sentencing agreements"). As we noted in *Alexiadis*,

> [A] previous version of Rule 11(e) granted courts the authority to reject charge agreements as well as sentencing agreements, but the rule was quickly amended to delete the reference to charge agreements. A memorandum written by the court rules attorney to the supreme court explained that the Criminal Rules Committee viewed this amendment as a "correction" — because under Alaska law, "a judge has no authority to disapprove a charge agreement."

*Alexiadis*, 355 P.3d at 573 (citing Supreme Court Order No. 1194 (July 15, 1995) and quoting Memorandum to the Alaska Supreme Court from Court Rules Attorney Christine Johnson (Aug. 3, 1995)).

decision of whether to pursue a *Blakely* aggravator was akin to a charging decision over which the court had no authority.[54] We therefore concluded that, just as the trial court had no authority to reject the parties' charge agreement and force the State to go to trial on the dismissed charges, the trial court also had no authority to reject the parties' agreement that the State would not litigate the *Blakely* aggravators and force the prosecutor to litigate those *Blakely* aggravators.[55] In other words, there was no basis for rejecting the agreement as too lenient because the court had no authority to sentence the defendant above the 1 to 3 years sentencing range that otherwise applied to the agreement.

Our decision in *Alexiadis* did not directly address the status of non-*Blakely* aggravators because the defendant in that case did not have any prior convictions, and there were accordingly no non-*Blakely* aggravators that could have applied. However, in dicta, we suggested that our reasoning in *Hartley* remained sound as to non-*Blakely* aggravators and that a trial court consequently retained the authority to *sua sponte* consider a non-*Blakely* aggravator when deciding whether to accept or reject a sentencing agreement as too lenient.[56]

*The arguments in the current case*

On appeal, Frankson agrees that trial courts have the authority to *sua sponte* consider a non-*Blakely* aggravator when sentencing a defendant after trial or pursuant

---

[54] *Alexiadis*, 355 P.3d at 573.

[55] *Id.*

[56] *Id.* at 572 ("Our reasoning in *Hartley* remains sound as applied to aggravating factors that do not require a jury trial under *Blakely* — aggravating factors that are based on the defendant's prior convictions, or on facts necessarily encompassed by the jury's verdicts, or on facts expressly conceded by the defendant.").

to a plea agreement that allows open sentencing. But he argues that trial courts have no authority to consider non-*Blakely* aggravators when evaluating a "complete" or "closed" Rule 11 agreement — that is, an agreement where the parties have agreed to a particular sentence. According to Frankson, when the parties agree to a sentence within the presumptive range, the trial court is bound by the State's agreement not to pursue any aggravators, and the court therefore has no authority to consider non-*Blakely* aggravators that might apply when evaluating whether to accept or reject the agreed-upon sentence.

But Frankson's position is contrary to principles of separation of powers and the history of plea bargaining under Alaska law. As we explained in *Alexiadis*, the distinction between sentencing agreements and charge agreements is grounded in the constitutional separation of powers doctrine.[57] As a general matter, the executive branch has the sole authority to decide whether to bring criminal charges and what criminal charges to bring.[58] In contrast, sentencing is primarily considered a judicial function, subject to the parameters and guidelines created by the legislature.[59]

---

[57] *Id.* at 572-73.

[58] *Id.*; *see also State v. Carlson*, 555 P.2d 269, 271-72 (Alaska 1976) (holding that trial court had no authority to accept defendant's plea to manslaughter over prosecutor's objection where defendant had been charged with first- and second-degree murder because accepting such a plea was "in effect ordering the district attorney not to prosecute the murder charge against [the defendant]"); *Pub. Def. Agency v. Superior Ct.*, 534 P.2d 947, 950-51 (Alaska 1975) (holding that trial court's order directing the Attorney General to prosecute a civil action for child support violated the separation of powers because the decision whether to prosecute a case was committed to the discretion of the executive branch and not subject to judicial control or review); *State v. Dist. Ct.*, 53 P.3d 629, 634 (Alaska App. 2002) (holding that the district court had no authority to reject the plea bargain between the State and the defendant on the basis that the State could have proved a more serious charge against the defendant).

[59] *Rust v. State*, 582 P.2d 134, 136-37 (Alaska 1978); *see also United States v.*

(continued...)

Under Alaska law, prosecutors additionally have full authority to dismiss charges that have already been filed and they are not required to seek court approval.[60]

Thus, as already discussed, courts in Alaska have no authority to reject charge agreements.[61]  And the criminal rule that governs the acceptance or rejection of plea agreements, Rule 11(e), is limited to the presentation and evaluation of sentencing agreements, over which the courts do have authority.

Alaska Criminal Rule 11(e)(1) provides, "If the parties reach a sentencing agreement, the court shall require disclosure of the agreement in open court at the time the plea is offered."  Once the sentencing agreement has been disclosed, the trial court "may accept or reject the agreement, or may defer that decision until receipt of a

---

[59]  (...continued)
*Ammidown*, 497 F.2d 615, 621 (D.C. Cir. 1973) ("It is axiomatic that, within the limits imposed by the legislature, imposition of sentence is a matter for discretion of the trial judge."); *People v. Farrar*, 419 N.E.2d 864, 866 (N.Y. 1981) ("The propriety of sentence bargaining notwithstanding, neither the prosecutor nor the court may ignore that the ultimate determination of an appropriate sentence is to be made by the court.").

[60]  *See* Alaska R. Crim. P. 43(a).  In many jurisdictions, the criminal rules require a prosecutor to obtain "leave of court" before dismissing charges that have already been filed. *See, e.g.*, Fed. R. Crim. P. 48(a); Ga. Code Ann. § 17-8-3 (1989); Tenn. R. Crim. P. 48(a); W. Va. R. Crim. P. 48(a); Tex. Code Crim. P. Ann. art. 32.02 (1966).

[61]  However, courts in many other jurisdictions have the authority to reject charge agreements, notwithstanding the separation of power concerns.  *See, e.g.*, *United States v. Torres-Echavarria*, 129 F.3d 692, 697 (2d Cir. 1997) ("[A] prosecutor's proposal to dismiss a claim . . . in consideration of a plea of guilty to some other offense . . . implicates core judicial functions.  In such a case, the court's adjudicatory and sentencing responsibilities justify active scrutiny of the plea agreement[.]"); *State v. Montiel*, 122 P.3d 571, 580 (Utah 2005) ("Even though a 'plea bargain [may be] cast in the form of a dismissal of [a] count, [its] effect [is] to limit the sentence available;' thus, 'the district judge [may] properly exercise[ ] reasonable discretion in rejecting the plea bargain.'" (quoting *United States v. Carrigan*, 778 F.2d 1454, 1463 (10th Cir. 1985))).

presentence report."[62] If the court accepts the sentencing agreement, then "the court shall impose sentence in accordance with the terms of that agreement."[63] If the court rejects the sentencing agreement, then the following procedures apply:

> [T]he court shall inform the parties of this fact and advise the prosecuting attorney and the defendant personally in open court that the court is not bound by the agreement. If the court rejects the agreement as too lenient, the court shall then afford the defendant the opportunity to withdraw the plea. If the court rejects the agreement as too severe, the court shall then afford the prosecuting attorney the opportunity to withdraw from the agreement.[64]

In other words, a trial court's rejection of a sentencing agreement as too lenient does not mean that the other parts of the plea agreement — *i.e.*, the charge agreement and any agreement about *Blakely* aggravators — automatically go away. Instead, the defendant must be given the choice to either withdraw their plea or to move forward with open sentencing under the remaining terms of the plea agreement. Likewise, the prosecutor must be given the opportunity to withdraw from the sentencing agreement if the trial court rejects the agreement as too severe.[65]

---

[62] Alaska R. Crim. P. 11(e)(1).

[63] Alaska R. Crim. P. 11(e)(2).

[64] Alaska R. Crim. P. 11(e)(3).

[65] The party that has not been prejudiced by the court's rejection of the sentencing agreement is not entitled to withdraw from the agreement. Thus, when the court rejects the sentencing agreement as too lenient, the State may not automatically withdraw from the other parts of the plea agreement. The defendant is entitled to withdraw their plea under these circumstances, but the State has not been prejudiced if the defendant chooses to maintain their plea and proceed to open sentencing; the only difference to the State is that the defendant would likely receive a *higher* sentence than what the State bargained for. In

(continued...)

But in order to properly evaluate the severity or leniency of a sentencing agreement, the trial court must know the breadth of its sentencing authority in light of the other parts of the agreement that it has no authority to reject — *i.e.*, in light of the charge agreement and any agreement about *Blakely* aggravators. In other words, the trial court must know what sentencing range would apply if the agreed-upon sentence was rejected and the parties nevertheless proceeded to open sentencing under the remaining terms of the agreement. (The parties also need to know what that sentencing range would be so that they can make an informed decision about whether to withdraw from the plea or proceed to open sentencing if the sentencing agreement is rejected as either too severe or too lenient.)

Prior to *Blakely*, it was clear that the trial court had the authority to *sua sponte* consider any aggravating factors that might apply when evaluating whether to reject a sentencing agreement as too lenient. But post-*Blakely*, the trial court no longer has the authority to consider those *Blakely* aggravators that must be tried to a jury and found beyond a reasonable doubt. Instead, as *Alexiadis* explained, those *Blakely* aggravators are now akin to charging decisions over which the trial court has no authority under Alaska law.[66]

Frankson argues that non-*Blakely* aggravators should be treated the same as *Blakely* aggravators, and a court should therefore not be allowed to consider non-*Blakely* aggravators when evaluating a sentencing agreement in which the parties have

---

[65] (...continued)
contrast, when a trial court rejects a sentencing agreement as too severe, the State has been deprived of its bargained-for exchange and the entire plea agreement is affected. In that case, the State is entitled to withdraw from the plea agreement as a whole. *See* Alaska R. Crim. P. 11(e)(3).

[66] *Alexiadis v. State*, 355 P.3d 570, 572-73 (Alaska App. 2015).

agreed to a non-aggravated sentence. But *Blakely* did not affect the trial court's authority to find aggravators that are based on prior convictions, and we perceive no reason why the court's traditional sentencing authority should be curtailed in this manner. Aggravating and mitigating factors have historically been treated as sentencing matters, and the fact that *Blakely* aggravators are now more akin to charging decisions does not mean that non-*Blakely* aggravators should be treated differently than they have been treated in the past.

We therefore hold that a trial court may consider a non-*Blakely* aggravator when evaluating whether to accept or reject a sentencing agreement as too lenient even if the parties have specifically agreed to a sentence within the presumptive range and no aggravators have been raised or argued.[67] Accordingly, we find no error in the superior court's consideration of an applicable non-*Blakely* aggravator when evaluating whether to accept or reject the agreed-upon sentence in this case. We additionally find no error in the superior court's consideration of a *Blakely* aggravator once the non-*Blakely* aggravator (and the enhanced sentencing range it would authorize) was established.[68]

We now turn to the second question raised by this petition, which is what factors a trial court should consider when deciding whether to accept or reject a

---

[67] We note, however, that the mere existence of a non-*Blakely* aggravator does not necessarily mean that a sentence within the presumptive range is too lenient. In order to ensure the overall legislative goal of eliminating disparity and achieving some measure of uniformity in felony sentencing, courts should continue to take a "measured and restrained approach" in adjusting sentences to accommodate aggravating and mitigating factors. *See Juneby v. State*, 641 P.2d 823, 833 (Alaska App. 1982), *modified on other grounds*, 665 P.2d 30 (Alaska App. 1983).

[68] *See Cleveland v. State*, 143 P.3d 977, 988 (Alaska App. 2006) (holding that *Blakely* aggravators could be considered once court had found a non-*Blakely* aggravator based on the defendant's prior convictions because court's sentencing authority remained the same).

sentencing agreement and whether a trial court should use a "clearly mistaken" standard of review when evaluating the reasonableness of an agreed-upon sentence.

*The parties' arguments regarding the factors that a trial court should consider and the standard that should be used when evaluating a sentencing agreement*

Although Alaska Criminal Rule 11(e) sets out procedures for accepting or rejecting sentencing agreements, the rule does not provide any guidance regarding the criteria a trial court should use when evaluating whether to accept or reject a sentencing agreement. The language of Rule 11(e) indicates that the decision to accept or reject a sentencing agreement rests in the sound discretion of the trial court: "Once the [sentencing] agreement has been disclosed, the court *may* accept or reject the agreement, or *may* defer that decision until receipt of a presentence report."[69] Thus, for purposes of our appellate review, the decision of whether to accept or reject a sentencing agreement under Alaska law rests in the sound discretion of the trial court and, in the absence of legal error, will only be reversed for an abuse of that discretion.[70]

---

[69] Alaska R. Crim. P. 11(e)(1) (emphasis added).

[70] Other jurisdictions likewise review a trial court's rejection of a plea agreement for an abuse of discretion. *See, e.g.*, *Santobello v. New York*, 404 U.S. 257, 262 (1971) ("A court may reject a plea in exercise of sound judicial discretion."); *State v. Conger*, 797 N.W.2d 341, 348 (Wis. 2010) ("[T]he rejection [of a plea agreement] is reviewed as an exercise of discretion."); *Hoskins v. Maricle*, 150 S.W.3d 1, 24-25 (Ky. 2004) (reviewing trial court's rejection of plea agreement for abuse of discretion); *State v. Hunt*, 485 A.2d 109, 113-14 (Vt. 1984) ("While respondent . . . has no right to insist on the acceptance of a plea of guilty, the court, nevertheless, *in the exercise of its discretion*, has the power to accept such a plea, if it deems it wise to do so. A tendered or offered plea should not be refused without good reason but, if refused, must be shown that the court abused its discretion." (citation omitted)).

But acknowledging that the decision to accept or reject a sentencing agreement rests in the sound discretion of the trial court does not provide much guidance to trial courts regarding what factors they should consider when making such a decision or how much deference, if any, they should show to the parties' reasons for the agreement. This absence of guidance is not unique to Alaska law. The equivalent rule in federal law, Federal Criminal Rule 11, likewise fails to provide any guidance regarding the criteria that the trial court should use in accepting or rejecting plea agreements.[71] As Professor LaFave has noted, "Just how much 'consideration' should be given to the disposition agreed to by the prosecutor and just how 'independent' the judge should be in these circumstances is a most difficult issue, seldom addressed in the cases."[72]

In his treatise, Professor LaFave points to a decision from the D.C. Circuit, *United States v. Ammidown*, as one of the rare cases that does discuss this issue.[73] In *Ammidown*, the court held that a trial judge should not reject a plea bargain unless the judge "can say that the action of the prosecuting attorney is such a departure from sound

---

[71] *See In re Morgan*, 506 F.3d 705, 710 (9th Cir. 2007) ("[N]owhere does [Federal Criminal] Rule 11 define the criteria by which a district court should exercise the discretion the rule confers, or explain *how* a district court should determine whether to accept a plea agreement."); *see also State v. Hager*, 630 N.W.2d 828, 833-34 (Iowa 2001) ("[T]he parameters [of a court's discretion to refuse or accept a plea bargain] have no clear lines, and there are no established criteria or standards to consider in the exercise of discretion."); *State v. Brown*, 689 N.W.2d 347, 351 (Neb. 2004) (noting that judicial discretion to reject plea bargains "is not unlimited" but "declin[ing] to adopt specific limitations").

[72] 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.3(e), at 913 (4th ed. 2015).

[73] *Id.* (citing *United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973)).

prosecutorial principle as to mark it an abuse of prosecutorial discretion."[74]  Frankson urges this Court to adopt a similar highly deferential standard.  But *Ammidown* involved a trial judge's rejection of a *charge* agreement — a situation where judges must be particularly careful about not encroaching on the prosecutor's inherent charging authority — as opposed to a sentencing agreement.[75]  *Ammidown* is therefore of little value to Alaska law where trial courts are not authorized to reject a prosecutor's charge agreement.[76]  As Professor LaFave acknowledges, trial judges are in a "different position" when evaluating whether to accept or reject the parties' sentencing agreement than when they are evaluating the prosecutor's decision to dismiss various charges as part of a plea agreement.[77]

Frankson also argues in favor of the adoption of a "clearly mistaken" standard of review for trial courts evaluating whether to accept or reject a sentencing agreement.  (The State has previously advocated for such a standard, although it does not do so in Frankson's case.[78])

---

[74]  *Ammidown*, 497 F.2d at 622.

[75]  *Id.* at 618.

[76]  *See Alexiadis v. State*, 355 P.3d 570, 573 (Alaska App. 2015); Alaska R. Crim. P. 11(e)(1) (providing procedures only for rejecting sentencing agreements); Alaska R. Crim. P. 43(a) (providing prosecutors with authority to dismiss charges and not requiring court's permission).

[77]  5 Wayne R. LaFave et al., *Criminal Procedure* § 21.3(e), at 916-17 (4th ed. 2015) ("If the plea bargain agreed to by the prosecution and the defendant were to deal directly with sentence concessions, rather than charge concessions as in *Ammidown*, it is beyond dispute that the trial judge is in a quite different position.").

[78]  *See Thomas v. State*, 413 P.3d 1207, 1210-11 (Alaska App. 2018) (noting State's argument that "a trial court's assessment of whether an agreed-upon sentence is too lenient is akin to an appellate court's assessment of whether a sentence is 'clearly mistaken'").

The "clearly mistaken" standard is a deferential standard of review that appellate courts use when evaluating whether a sentence that a trial judge has imposed is excessive.[79] The standard is founded on two concepts: that "reasonable judges, confronted with identical facts, can and will differ on what constitutes an appropriate sentence; [and] that society is willing to accept these sentencing discrepancies, so long as a judge's sentencing decision falls within a permissible range of reasonable sentences."[80]

We agree with Frankson that the "clearly mistaken" standard may be helpful in that it reminds trial courts that the question is not necessarily what sentence the trial court would itself impose, but instead whether the sentence is within the permissible range of reasonable sentences that a trial court could impose. But we are hesitant to approve an appellate standard for use in the trial courts given the different functions of the courts. We are also not persuaded that the "clearly mistaken" standard is the best fit because it does not account for the other factors outside the *Chaney* criteria that can influence plea bargaining.

As the State points out, there are often a number of factors that can influence plea bargaining, many of which the trial court has only limited knowledge. These factors include, but are not limited to: (1) evidentiary and witness issues; (2) the victim's wishes; (3) resource limitations; and (4) relevant circumstances beyond the parties' control (such as the COVID-19 pandemic).[81] The State argues that trial courts

---

[79] *McClain v. State*, 519 P.2d 811, 813-14 (Alaska 1974).

[80] *Erickson v. State*, 950 P.2d 580, 586 (Alaska App. 1997) (internal quotation marks and citation omitted).

[81] *See, e.g.*, *United States v. Miller*, 722 F.2d 562, 565 (9th Cir. 1983) ("Courts do not know which charges are best initiated at which time, . . . which allocation of prosecutorial

(continued...)

should consider such additional factors, along with the *Chaney* sentencing criteria, when evaluating whether to accept or reject a sentencing agreement. We agree that courts should consider such additional factors when brought to their attention by the parties.[82] Such an approach is consistent with the standard advocated by the American Bar Association: "As part of the plea process, appropriate consideration should be given to the views of the parties, the interests of the victims and the interest of the public in the effective administration of justice."[83]

We emphasize, however, that the burden is on the parties to bring such considerations to the trial court's attention and to adequately explain the underlying reasons for a particular sentencing agreement, as appropriate.

Lastly, both parties argue that when a trial court rejects a sentencing agreement, it should put its reasons for doing so on the record. The majority of jurisdictions have adopted such a requirement, and we likewise adopt it here.[84] As one

---

[81] (...continued) resources is most efficient, . . . or the relative strengths of various cases and charges." (citations omitted)).

[82] *See, e.g.*, *State v. Conger*, 797 N.W.2d 341, 353 (Wis. 2010) ("[A] sensible — and important — starting point for a [trial] court evaluating a plea is to consider the reasons stated by the prosecutor and defense counsel for recommending the plea agreement.").

[83] *ABA Standards for Criminal Justice* § 14-1.1(b) (3d. ed. 1999).

[84] *See State v. Montiel*, 122 P.3d 571, 578 (Utah 2005) (observing that "the majority of jurisdictions require that judges make their reasoning for rejecting a proposed plea agreement a matter of record" and adopting such a requirement); *see also In re Morgan*, 506 F.3d 705, 711-12 (9th Cir. 2007) (holding that courts must provide individualized reasons for rejecting a sentencing agreement based on the specific facts and circumstances presented); *United States v. Robertson*, 45 F.3d 1423, 1438 (10th Cir. 1995) (requiring courts to articulate on the record a sound reason for rejecting a plea agreement); *United States v. Moore*, 916 F.2d 1131, 1135-36 (6th Cir. 1990) (same); *United States v. Delegal*, 678 F.2d 47, 50 (7th Cir.
(continued...)

federal circuit court noted, "[R]equiring [trial] courts to articulate a sound reason for rejecting a plea is the surest way to foster the sound exercise of judicial discretion."[85] Such a requirement also facilitates any appellate review and provides important information to the parties who must decide how best to proceed if their sentencing agreement is rejected.[86]

*Applying these principles to the current case*

In the current case, the superior court rejected the sentencing agreement as too lenient. Given the record before us, we would affirm that decision as within the court's discretion.[87] We nevertheless conclude that a remand for reconsideration of the parties' sentencing agreement should occur. We reach this conclusion for two reasons.

First, neither the parties nor the superior court had the benefit of the guidance provided in this decision, and the record is consequently not as developed as

---

[84] (...continued)
1982) (same); *Yell v. Commonwealth*, 242 S.W.3d 331, 341 (Ky. 2007) (same); *State v. Hunt*, 485 A.2d 109, 114-15 (Vt. 1984) (same).

[85] *Moore*, 916 F.2d at 1136 (citing *Delegal*, 678 F.2d at 50).

[86] *United States v. Kraus*, 137 F.3d 447, 453 (7th Cir. 1998) (requiring an on-the-record explanation facilitates appellate review); *Robertson*, 45 F.3d at 1438 ("Requiring district courts to articulate the reasons for rejecting a plea agreement not only helps insure the court is aware of and gives adequate deference to prosecutorial discretion, it is the surest, indeed the only way to facilitate appellate review of rejected plea bargains."); *cf. Houston v. State*, 648 P.2d 1024, 1027 (Alaska App. 1982) (observing that a full explanation of a sentence "contributes to the rationality of the sentence, facilitates the reviewing court's evaluation of the propriety of the sentence, and fosters public confidence in the criminal justice system").

[87] *Cf. Conger*, 797 N.W.2d at 348 (explaining that the appellate court "will sustain a court's exercise of discretion if the court: (1) examined the relevant facts; (2) applied a proper standard of law; and (3) using a demonstrably rational process, reached a conclusion that a reasonable judge could reach").

it could have been. We note, in particular, that the parties have provided more detail to this Court than they did to the superior court regarding the factors that they considered when reaching this sentencing agreement. We therefore conclude that a remand is appropriate to give the parties an opportunity to more fully explain their reasons for entering into the sentencing agreement and for the superior court to evaluate those reasons within the framework described here.

The second reason for the remand is more procedural. As previously explained, when a trial court rejects a sentencing agreement as too lenient, Criminal Rule 11(e) requires the court to give the defendant the option to either withdraw his guilty plea or go forward with open sentencing. This does not appear to have occurred in this case. Instead, the parties appear to have treated the superior court's rejection of the sentencing agreement as automatically nullifying the entire plea agreement. But Frankson should have been given the choice to retain the benefits of the charge agreement (over which the superior court had no authority) and proceed to open sentencing on his guilty pleas. Thus, if, on remand, the superior court again rejects the parties' sentencing agreement, the trial court should ensure that the procedures under Rule 11(e) are properly followed.

*Conclusion*

For the reasons explained here, we VACATE the superior court's ruling and REMAND this case to the superior court for further proceedings consistent with this opinion.